## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRITTANY BANCROFT and ARIEL SHARONE, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | **CIVIL ACTION NO.** |
| | **SECTION** |
| **v.** | **JUDGE:** |
| **217 BOURBON, LLC and JESSE WADE YEOMANS,** | **MAGISTRATE:** |
| **Defendants.** | |

## COMPLAINT

## JURY TRIAL DEMANDED

**NOW INTO COURT**, comes Plaintiffs Brittany Bancroft ("Bancroft") and Ariel Sharone ("Sharone") (collectively referred to herein as "plaintiffs"), on behalf of themselves and all others similarly situated, complaining of defendants 217 Bourbon, LLC, and Jesse Wade Yeomans ("Yeomans") (collectively referred to herein as "defendants"), who respectfully allege as follows:

### NATURE OF THE ACTION

1.     This action arises out of defendants' failure to pay minimum wage and overtime pay as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), conversion and unjust enrichment for misappropriation of tips under Louisiana Civil Code Article 2315 ("La. Civ. Code Art. 2315") and Article 2298 ("La. Civ. Code Art. 2298") respectively, unlawful deductions under Louisiana Revised Statute 23:635 ("La. Rev. Stat. 23:635"), and retaliatory firing in violation of the FLSA.

1

2.     Plaintiffs seek injunctive and declaratory relief against defendants' unlawful actions, compensation for unpaid minimum wages and overtime pay, unpaid tips unlawful deductions, liquidated damages, pre-judgment and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA, La. Rev. Stat. 23:632 and 23:635, and La. Civ. Code Art. 2315 and 2298.

## JURISDICTION

3.     This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over plaintiffs' claims under the La. Civ. Code Art. 2315 and 2298, and La. Rev. Stat. 23:635 pursuant to 28 U.S.C. §1367.

## VENUE

4.     Venue is proper in the Eastern District of Louisiana under 28 U.S.C. § 1391, as the location of the Bourbon Street Drinkery (the "Drinkery") bar is in the Eastern District of Louisiana.

## THE PARTIES

**Plaintiffs**

5.     Brittany Bancroft resides in New Orleans, Louisiana. Bancroft was been employed as a bartender at the Drinkery bar in New Orleans from in or about October 1, 2018, through her termination on December 14, 2020.

6.     Ariel Sharone resides in Lake Stevens, Washington. Sharone worked as a bartender at the Drinkery bar in New Orleans from in or about November 2019 through his termination on January 10, 2020.

**Defendants**

7.     Defendant 217 Bourbon, LLC, is a Louisiana company that owns and operates

the Bourbon Street Drinkery, a popular bar in New Orleans. The Drinkery is located in the French Quarter, at 217 Bourbon Street.

8.    The Drinkery prepares and serves alcoholic beverages to local and tourist clientele. The Drinkery employs approximately sixty employees, of which four are managers and eight are assistant managers.

9.    At all times relevant to this action, The Drinkery was an "enterprise engaged in interstate commerce" within the meaning of the FLSA. Defendant 217 Bourbon, LLC, has: (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

10.    Defendant Jesse Wade Yeomans is the president and principal owner of The Drinkery and is sued individually in his capacity as an owner, officer and/or agent of The Drinkery. Yeomans exercises sufficient control over The Drinkery/217 Bourbon, LLC operations to be considered plaintiffs' employer and/or joint employer under the FLSA, has the authority to hire, fire, and discipline employees, sets and controls payroll, and is on The Drinkery's premises on a regular basis.

11.    At all times relevant to this action, managers and/or assistant managers of the defendants, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, the defendants ratified, embraced, and added to their conduct.

12.    At all times relevant to this action, defendants had knowledge of the unlawful actions complained about herein, might have prevented the actions which caused the plaintiffs' damage, and did not do so. Thus, defendants are answerable for the offenses committed by their

managers and/or assistant managers in the course of their employment pursuant to La. Civ. Code Art. 2320.

## COLLECTIVE ACTION ALLEGATIONS

13.     The claims in this Complaint arising out of the FLSA are brought by plaintiffs on behalf of themselves and similarly situated persons (*i.e.* the bartenders at The Drinkery bar in New Orleans) who were employed since the date three years prior to the filing of this Complaint who elect to opt-in to this action (the "FLSA Collective").

14.     The FLSA Collective consists of approximately forty similarly situated current and former bartenders of The Drinkery, who have been victims of defendants' common policy and practices that have violated their rights under the FLSA by, *inter alia*, willfully denying them minimum and overtime wages and other pay and unlawfully retaining their tips.

15.     As part of their regular business practice, defendants have intentionally, willfully, and repeatedly harmed plaintiffs and the FLSA Collective by engaging in a pattern, practice, and/or policy of violating the FLSA and committing conversion of their tips. This policy and pattern or practice includes, *inter alia,* the following:

a.  failing to keep accurate records of hours worked by employees as required by the FLSA and La. Rev. Stat. 23:14;

b.  failing to keep accurate records of tips received by bartenders;

c.  failing to provide advance notice that the tip credit was going to be applied;

d.  failing to pay employees the statutory minimum wage for actual hours worked;

e.  failing to pay employees the appropriate overtime rate for all time worked in excess

of forty hours per week;

    f.    depriving the bartenders of tips that they earned; and

    g.    making unlawful deductions from employees' wages.

16.    Defendants, jointly and severally, have been unjustly enriched by the implementation of these illegal pay practices.

17.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

18.    Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant damages to plaintiffs and the FLSA Collective.

19.    The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. The FLSA Collective employees are known to The Drinkery, are readily identifiable, and locatable through The Drinkery's records. These similarly situated employees should be notified of and allowed to opt into this action, pursuant to 29 U.S.C. § 216(b).

**FAILURE TO PAY MINIMUM WAGE AND MISAPPROPRIATION OF TIPS**

20.    The FLSA requires that employers pay all non-exempt employees a statutory minimum wage. An employer is permitted to take a "tip credit" towards its minimum wage obligation, provided, *inter alia,* that tipped employees are informed in advance that the tip credit will be applied and provided that the tipped employees are permitted to retain all the tips they receive.

21.    For over three years, and through the present, the federal minimum wage has been $7.25 per hour.

22.    Bancroft has been employed as a bartender at The Drinkery from on or about

October 1, 2018, through the present.

23.    Bancroft's duties and responsibilities include, but are not limited to, taking customer drink orders, preparing and serving alcoholic beverages, cleaning and stocking the bar, and working private events.

24.    Throughout her employment at The Drinkery, Bancroft was paid an hourly wage of $2.13.

25.    Sharone worked as a bartender at the Drinkery from November 1, 2019, through his January 10, 2020 termination.

26.    Sharone's duties and responsibilities include, but are not limited to, taking customer drink orders, preparing and serving alcoholic beverages, cleaning and stocking the bar, and working private events.

27.    Throughout his employment with the Drinkery, Sharone was paid an hourly wage of $2.13.

28.    Defendants did not provide advance notice to plaintiffs and the FLSA Collective that the tip credit would be applied.

29.    Because defendants failed to provide lawful notice in regard to the tip credit, defendants improperly applied the tip credit allowance that is available under the FLSA.

30.    By law, by intention of the customers, and by agreement between defendants and their bartenders, the tips given by customers to the bartenders at The Drinkery were the property of the bartenders.

31.    Customer tips directed to the bartenders at The Drinkery, however, were not given in their entirety to the bartenders to whom they were given.

32.    Although defendants took a "tip credit" so they could pay plaintiffs and the FLSA

Collective less than $7.25 per hour in wages, defendants' managers retained a significant portion of cash and credit card tips.

33.     By retaining a portion of the tips, defendants lost their privilege, under the FLSA, of applying the tip credit to satisfy the minimum wage requirement.

34.     Defendants have a policy that prohibits bartenders from cashing in their own tips. Managers also forbid the plaintiffs from counting their own tips.

35.     During each shift, pursuant to The Drinkery's policy, a manager counts the bartenders' cash tips that have been collected and pooled. The cash tips are counted by a manager.

36.     When The Drinkery managers Ryan Mears ("Mears"), and Moises Ruiz ("Ruiz"), count the bartenders' tips, they routinely retained a significant portion of the tips.

37.     The tips that are taken by Mears and Ruiz are not distributed to other tipped employees.

38.     The managers do not serve customers and are not employees that customarily and regularly receive tips.

39.     As a result, the amount of tips plaintiffs earn during shifts that are supervised by Mears and Ruiz are lower than the amount of tips they make during shifts in which they are supervised by other managers.

40.     The tips that are not retained by managers are pooled between the bartenders that are on duty at The Drinkery and distributed to the bartenders who worked that day, based on hours worked, an are paid out up to two weeks after their shift.

41.     Defendants also retain a large portion of plaintiffs' credit card tips and refuse to show plaintiffs reports which show the amount of credit card tips that are earned per shift.

42.     As a result of these pay practices, throughout plaintiffs' employment with The Drinkery, defendants have retained a significant amount of tips that are due to each plaintiff and to the FLSA Collective.

43.     Defendants, jointly and individually, have been unjustly enriched by their unlawful actions.

44.     These unlawful practices are open and notorious to all Drinkery management and staff. Upon information and belief, these pay practices have been in place at the Drinkery for over three years, and were implemented by Yeomans in his capacity as owner of the Drinkery.

45.     Plaintiffs have complained to different managers and to Yeomans about Ruiz and Mears taking their tips. All of the managers plaintiffs have complained to have acknowledged their awareness of defendants' tip theft, but have refused to take remedial action in fear of being retaliated against and/or losing their jobs.

**FAILURE TO PAY OVERTIME PAY**

46.     The FLSA requires that employers pay all non-exempt tipped employees one and one-half (1 ½) times their regular rate for all hours worked in excess of forty during any workweek.

47.     During peak season, which usually spans from the end of December to June ("peak season"), and during Mardi Gras, plaintiffs and the FLSA Collective regularly work in excess of forty hours and do not receive proper overtime compensation.

48.     Throughout her employment with the Drinkery, Bancroft has typically worked weekday or weekend shifts from 10:00 a.m. to 4:00 p.m., 12:00 p.m. to 8:00 p.m., or the closing shift which starts at either 4:00 p.m., 6:00 p.m., or 8:00 p.m, and ends after 3:00 a.m. During peak

season or Mardi Gras, Bancroft worked forty to sixty hours per week.

49.    Throughout his employment with the Drinkery, Sharone has typically worked weekday or weekend shifts from 10:00 a.m. to 4:00 p.m., 12:00 p.m. to 8:00 p.m., or the closing shift which starts at either 4:00 p.m., 6:00 p.m., or 8:00 p.m, and ends after 3:00 a.m. During peak season or Mardi Gras, Sharone worked forty to sixty hours per week.

50.    For hours worked over forty, defendants utilize the tip credit to pay plaintiffs their standard hourly rate of $2.13, applying no overtime at all.

51.    Because defendants retain a portion of the tips of plaintiffs and the FLSA Collective and have not given proper notice of the tip credit provisions to its bartenders, defendants are not eligible to use the tip credit to satisfy the statutory minimum wage or to pay overtime on a reduced hourly rate.

52.    As such, plaintiffs and the FLSA Collective should have been paid one and one-half the full minimum hourly wage for all hours worked over forty.

53.    Defendants failed to pay plaintiffs, and the FLSA Collective, the full overtime wages to which they were entitled to under the FLSA.

## UNLAWFUL DEDUCTIONS

54.    It is the policy of defendants to make deductions from the bartenders' wages to pay for mistakes (e.g., chargebacks, incorrect change) and customer walkouts.

55.    For example, customers are permitted to contest their credit card charges with most major providers, and occasionally dispute the charge. On at least one occasion, a chargeback for an entire check was deducted from employees' tips on or about January 2020, not merely the tipped portion of the check, in effect requiring the employees to pay for the Drinkery's loss out of their own wages.

56.      Defendants also deduct from the bartenders' tips if the register is short money. The difference is split between all of the bartenders on shift.

57.      These types of unlawful deductions were applied to plaintiffs and the FLSA Collective.

## FAILURE TO KEEP ACCURATE TIME RECORDS

58.      During the period of plaintiffs' employment, defendants failed to keep true and accurate records of the daily and weekly hours worked by, and of the tips and wages paid each pay period to plaintiffs and the FLSA Collective as required by FLSA and La. Rev. Stat. 23:14.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

59.      Plaintiffs repeat and reallege paragraphs 1 through 58 as if fully set forth herein.

60.      Defendants are employers and/or joint employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a) and employed plaintiffs and the FLSA Collective.

61.      Defendants were required to pay to plaintiffs and the FLSA Collective the applicable federal minimum wage rate.

62.      Defendants failed to pay plaintiffs and the FLSA Collective the minimum wages to which they are entitled under the FLSA.

63.      Defendants are not entitled to reduce the minimum wages of plaintiffs and the FLSA Collective by applying the tip credit allowance that is available under the FLSA because, *inter alia*:

a.      defendants were required to but failed to inform plaintiffs and the FLSA Collective in advance that the tip credit was going to be applied; and

b.      made unlawful deductions from the FLSA Collective, in violation of the

FLSA, 29 U.S.C. § 203(m) and supporting regulations.

64.     Defendants failed to keep a true and accurate record of the name, address, and occupation of each person employed by them, of the daily and weekly hours worked by, and of the wages paid each pay period to each employee in violation of the FLSA and La. Rev. Stat. 23:14.

65.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of the FLSA Collective.

66.     As a result of defendants' willful violations of the FLSA, plaintiffs and the FLSA Collective suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

67.     Plaintiffs repeat and reallege paragraphs 1 through 66 as if fully set forth herein.

68.     Defendants are required to pay plaintiffs and the FLSA Collective one and one-half (1½) times their regular rate for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq*.

69.     Defendants have failed to pay plaintiffs and the FLSA Collective the overtime wages to which they are entitled under the FLSA.

70.     By retaining a portion of the tips of plaintiffs and the FLSA Collective, defendants lost their privilege, under the FLSA, of using the tip credit to satisfy the minimum wage.

71.     Defendants unlawfully utilized a tip credit to pay plaintiffs and the FLSA Collective a reduced hourly rate for all hours worked over forty.

72.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay plaintiffs and the FLSA Collective their full overtime wages.

73.     Due to defendants' violations of the FLSA, plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## THIRD CLAIM
### (La. Rev. Stat. 23:635- Unlawful Deductions)

74.     Plaintiffs repeat and reallege paragraphs 1 through 73 as if fully set forth herein.

75.     La. Rev. Stat. 23:635 prohibits employers from assessing any fines against their employees or deducting any sum as fines from their wages, unless as permitted by law.

76.     Defendants unlawfully made deductions from the pay of the FLSA Collective as fines to pay for mistakes (e.g., chargebacks, incorrect change), and customer walkouts.

77.     Defendants' knowing and intentional demand and retention of a portion of the FLSA Collective's wages were willful violations of La. Rev. Stat. 23:635.

78.     As a result of defendants' willful violations of La. Rev. Stat. 23:635, plaintiffs and the FLSA Collective are entitled to recover from defendants their unpaid wages, penalty wages, reasonable attorneys' fees, and pre-judgment and post-judgment interest under La. Rev. Stat. 23:632.

## FOURTH CLAIM
### (La. Civ. Code Art. 2298 - Unjust Enrichment)

79.     Plaintiffs repeat and reallege paragraphs 1 through 78 as if fully set forth

herein.

80.     Additionally, and in the alternative, defendants have enriched themselves without cause as a result of withholding tips to which plaintiffs were entitled.

81.     Defendants' enrichment was at plaintiffs' expense because plaintiffs would have received the money owed had the defendants not intentionally and willfully violated federal and state wage laws.

82.     Plaintiffs allege unjust enrichment in the alternative to their other stated claims for their unpaid tips.

83.     As a result of defendants' willful violations of La. Civ. Code Art. 2298, plaintiffs and the FLSA Collective are entitled to recover from defendants their unpaid wages, and pre-judgment and post-judgment interest under La. Civ. Code Art. 2298.

## FIFTH CLAIM
### (La. Civ. Code Art. 2315- Conversion – As to Bancroft, only, and the FLSA Collective)

84.     Plaintiffs repeat and reallege paragraphs 1 through 78 as if fully set forth herein, excluding all references to plaintiff Ariel Sharone.

85.     Defendants intentionally interfered with and exercised dominion and control over tips that plaintiffs and the FLSA Collective had the legal right to possess.

86.     As a result of defendants' violations of the La. Civ. Code Art. 2315, plaintiffs and the FLSA Collective are entitled to recover their unpaid tips, costs of the action, and pre-judgment and post-judgment interest pursuant to La. Civ. Code Art. 2315.

## SIXTH CLAIM
### Retaliation in Violation of FLSA (as to Ariel Sharone, Individually)

87.     Plaintiffs incorporate paragraphs 1 – 86 as if stated in full herein.

88.     At all material times, Sharone was a wage salaried employee of defendants who

faithfully performed his duties under their terms of employment with defendants as requested and required by them.

89.    On or about January 9, 2020, Sharone complained to his managers, including Valerie Ramos, that managers were drawing from the tip pool in the manner outlined above in this complaint.

90.    As a result of his complaints, Sharone was removed from the bartending shift schedule. The next day, on January 10, 2020, Sharone specifically cited the FLSA as a basis for his complaints, advising his manager "Employers that violate the law must pay employees all tips wrongfully withheld…"

91.    As a result of his complaint, Sharone was removed from the bartending shift schedule and never given another shift. This "permanent removal" from the work schedule is a termination (although he was not formally fired), which constitutes adverse employment actions by defendants.

92.    Defendants' adverse employment acts against Sharone was done with malice or with reckless indifference to his federally protected rights. Sharone is therefore entitled to recover attorney fees and related expenses incurred pursuant to 29 U.S.C.A. § 216(b).

**SEVENTH CLAIM**
**Retaliation in Violation of FLSA (as to Brittany Bancroft, Individually)**

93.    Plaintiffs incorporate paragraphs 1 – 92 as if stated in full herein.

94.    At all material times, Bancroft was a wage salaried employee of defendants who faithfully performed her duties under their terms of employment with defendants as requested and required by them.

95.    On December 13, 2020, Bancroft sent the following email to Valerie Ramos, the Sales and Operations manager of the Drinkery:

14

"Dear Valerie,

When I received my check for the 10/31 – 11/13 time period, I was surprised to see chargebacks were applied to my check. When I saw the payroll form, the chargebacks seem to be the amounts of full checks, not just the tipped portions. Also, I am concerned that our managers, who are not tipped employees, are taking our tips. For these reasons, I believe I may not be receiving the correct wages.

I am requesting my daily and weekly records for my hours worked, and of the tips received and wages paid to me for the past two years. I want to go through the records to make sure I am getting the appropriate amount of wages, and that the tipped portion is correct. I am requesting these records be sent to me within two weeks of this email…."

96.    That evening, on December 13, 2020, Ramos sent a threatening email response to Bancroft, which addressed her FLSA-based complaint as follows:

"** We have boxes with tip and payroll information you are more than welcome to take a look at. Our GOOGLE DRIVE has a maximum capacity of storage, so after a few months these sheets are deleted from our files, but a papercopy is kept within boxes. I can place these boxes for you on the second floor and you can root through them in front of me. It should take a few hours for you to do this, so I can sit next to you while I work on my job duties and guide you if need be, you'd need to file everything in order again, so again I can contribute some time for this— we will more than likely be closed from Monday-Wednesday now, so we can do this on Thursday 12/17 from 1-4pm or again on Thursday 01/07/21 from 1pm-4pm."

97.    Also on December 13, 2020, Yeomans (to whom Bancroft did not direct her original question) sent Bancroft an email stating: "I'm going to temporarily remove you from the schedule until we get this resolved." (emphasis added).

98.    On December 14, 2020, Bancroft responded to Yeomans: "I am asking that you not remove me from the schedule, as I was simply asking a question to clarify wages." Bancroft was immediately notified via text message that her shifts that evening and the next three days were cancelled, and she was never given another shift at the Drinkery, despite years of faithful

service.

99.    As a result of her complaints, Bancroft was removed from the bartending shift schedule permanently. This "permanent removal" from the work schedule is a termination (although she was not formally fired), which constitutes adverse employment actions by defendants.

100.    Defendants' adverse employment acts against Bancroft was done with malice or with reckless indifference to her federally protected rights. Bancroft is therefore entitled to recover attorney fees and related expenses incurred pursuant to 29 U.S.C.A. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and the FLSA Collective, respectfully request that this Court enter a judgment:

a.    authorizing the issuance of notice at the earliest possible time to all current and former bartenders who were employed at the Drinkery bar in New Orleans during the three years immediately preceding the filing of this action.  This notice should inform them that this action has been filed, describe the nature of the action, and explain their right to opt into this lawsuit;

b.    declaring that defendants, jointly and severally, have violated the minimum wage and overtime provisions of the FLSA and are liable individually and in solido;

c.    declaring that defendants, jointly and severally, have violated La. Civ. Code Art. 2315 by committing conversion of plaintiffs and the FLSA Collective's tips and are liable individually and in solido;

d.    declaring that defendants, jointly and severally, have violated the unlawful deductions provisions of La. Rev. Stat. 23:635 and are liable individually and in solido;

e.    declaring that defendants fired Bancroft and Sharone in retaliation against their

16

exercise of federally protected rights, specifically for raising complaints under the FLSA;

  f.  declaring that defendants' violations of the FLSA were willful;

  g.  disgorging from defendants and ordering that the defendants remit back the amount of the tips misappropriated from the wages of plaintiffs and the FLSA Collective;

  h.  awarding plaintiffs and the FLSA Collective for tips which were unlawfully collected and retained by the defendants;

  i.  awarding plaintiffs and the FLSA Collective damages for unpaid minimum and overtime wages;

  j.  awarding plaintiffs and the FLSA Collective damages for all unauthorized deductions;

  k.  awarding plaintiffs and the FLSA Collective liquidated damages in an amount equal to the total amount of the wages found to be due, pursuant to the FLSA;

  l.  awarding plaintiffs and the FLSA Collective pre-judgment interest;

  m.  awarding plaintiffs and the FLSA Collective reasonable attorneys' fees and costs pursuant the FLSA, La. Rev. Stat. 23:632, and La. Civ. Code Art. 2298; and

  n.  awarding such other and further relief as the Court deems just and proper;

  o.  For a trial by jury on all issues so triable.

        **Respectfully submitted:**

        */s/ Daniel A. Meyer*
        Joseph M. Bruno (La. Bar # 3604)
        Daniel A. Meyer (La. Bar # 33278)
        Bruno & Bruno, L.L.P.
        855 Baronne Street
        New Orleans, Louisiana 70113
        Telephone: (504) 525-1335
        Facsimile: (504) 562-6775
        Email: dmeyer@brunobrunolaw.com
        *Attorneys for Bancroft and Sharone*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRITTANY BANCROFT and ARIEL SHARONE, on behalf of themselves and all others similarly situated,** | **CIVIL ACTION NO.** |
| **Plaintiffs,** | **SECTION** |
| | **JUDGE:** |
| **v.** | **MAGISTRATE:** |
| **217 BOURBON, LLC and JESSE WADE YEOMANS,** | |
| **Defendants.** | |

### VERIFICATION

PARISH OF _Orleans_

STATE OF LOUISIANA

BEFORE ME, the undersigned authority, personally came and appeared BRITTANY BANCROFT who, being by me first duly sworn, did depose and say that she has read the Complaint in the above captioned matter and that all of the facts and allegations contained therein are true and correct to the best of her knowledge, information, and belief.

_Brittany Bancroft_
BRITTANY BANCROFT

_Daniel A. Meyer_
Daniel A. Meyer
Notary Public # 92662
Lifetime Commission

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRITTANY BANCROFT and ARIEL SHARONE, on behalf of themselves and all others similarly situated,** | **CIVIL ACTION NO.** |
| | **SECTION** |
| **Plaintiffs,** | **JUDGE:** |
| **v.** | **MAGISTRATE:** |
| **217 BOURBON, LLC and JESSE WADE YEOMANS,** | |
| **Defendants.** | |

## VERIFICATION

**COUNTY OF** <u>Dade</u>

**STATE OF** <u>Florida</u>

I, ARIEL SHARONE, verify that all of the facts and allegations contained in the foregoing verified petition are true and correct to the best of my knowledge, information, and belief.

This March 3, 2021.

DocuSign by:

_____
ARIEL SHARONE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRITTANY BANCROFT and ARIEL SHARONE, on behalf of themselves and all others similarly situated,** | **CIVIL ACTION NO.** |
| | **SECTION** |
| **Plaintiffs,** | **JUDGE:** |
| **v.** | **MAGISTRATE:** |
| **217 BOURBON, LLC and JESSE WADE YEOMANS,** | |
| **Defendants.** | |

**CONSENT TO SUE**

I hereby consent to be a party plaintiff in the case of *Brittany Bancroft, et al. v. 217 Bourbon, LLC, and Jesse Wade Yeomans*, United States District Court, Eastern District of Louisiana. I authorize Daniel A. Meyer and the law firm Bruno & Bruno, LLP, to represent me in this case.

I wish to preserve and pursue any claim that I may have to the greatest extent possible. Therefore, I expressly consent to the use of this consent form for purposes of making me a party plaintiff in this case for my claims under the Fair Labor Standards Act and Louisiana state law.

Date: 03/02/2021

BRITTANY BANCROFT

DocuSign Envelope ID: 16366A75-704C-4344-8CC8-EC97A0D6A2AE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRITTANY BANCROFT and ARIEL SHARONE, on behalf of themselves and all others similarly situated,** | **CIVIL ACTION NO.** |
| | **SECTION** |
| **Plaintiffs,** | **JUDGE:** |
| **v.** | **MAGISTRATE:** |
| **217 BOURBON, LLC and JESSE WADE YEOMANS,** | |
| **Defendants.** | |

**CONSENT TO SUE**

I hereby consent to be a party plaintiff in the case of *Brittany Bancroft, et al. v. 217 Bourbon, LLC, and Jesse Wade Yeomans*, United States District Court, Eastern District of Louisiana. I authorize Daniel A. Meyer and the law firm Bruno & Bruno, LLP, to represent me in this case.

I wish to preserve and pursue any claim that I may have to the greatest extent possible. Therefore, I expressly consent to the use of this consent form for purposes of making me a party plaintiff in this case for my claims under the Fair Labor Standards Act and Louisiana state law.

This March 3, 2021.

DocuSigned by:

5436555D3A4594AA

ARIEL SHARONE