UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRITTANY BANCROFT and ARIEL SHARONE, on behalf of themselves and all others similarly situated,** | CIVIL ACTION NO. 2:21-cv-545 |
| **Plaintiffs,** | JUDGE: BARRY W. ASHE |
| v. | MAGISTRATE JUDGE: JANIS VAN MEERVELD |
| **217 BOURBON, LLC and JESSE WADE YEOMANS,** | |
| **Defendants.** | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
RULE 12(b)(1) AND 12(b)(6) MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Plaintiffs in this matter, Brittany Bancroft and Ariel Sharone, on behalf of themselves and their co-workers (collectively, "Plaintiffs"), have sued their former employers 217 Bourbon, LLC, and Jesse Wade Yeomans (collectively, "Defendants") for violation of employee rights under federal and state statutes, including the Fair Labor Standards Act ("FLSA").

Defendants filed a motion to dismiss under 12(b)(1) and 12(b)(6) arguing solely that the FLSA does not cover Defendants or Plaintiffs. Defendants' motion is wrong and should be denied for several reasons. First, FLSA coverage is an element of plaintiffs' claims, not a jurisdictional prerequisite, therefore defendants' 12(b)(1) motion cannot survive. For this reason, Defendants' reliance on extrinsic evidence—without plaintiffs' opportunity to conduct discovery—is impermissible and should be disregarded by the Court. Second, Defendants apply both the wrong facts and law to determine FLSA coverage, analyzing this case exclusively under FLSA "individual

1

coverage." Third, even if Defendants *had* correctly applied the law and concluded the FLSA does not cover these claims, plaintiffs' retaliation claims would remain unaffected, vesting this Court with original and supplemental jurisdiction of all claims asserted.

## I.     Background Facts

Plaintiffs work as bartenders, cooks, and barbacks at The Drinkery, a bar and restaurant operated by Defendants on Bourbon Street, in New Orleans, Louisiana. Plaintiffs' original complaint alleged they serve "alcoholic beverages to local and tourist clientele."[1] The original complaint further alleged Drinkery employees are "engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and have "an annual gross volume of sales in excess of $500,000.00."[2]

Plaintiffs amended their lawsuit to further expand on their involvement with interstate commerce. For example, Plaintiffs' Amended Complaint alleges details regarding the Drinkery employees sales to non-Louisiana travelers and corporations at events[3], enumerates several non-Louisiana beer, wine, and liquor products handled and sold by them[4], and identifies several non-Louisiana food products handled by the employees.[5] The amended complaint also identifies specific engagement with and handling of instrumentalities of interstate commerce, including credit cards and card machines, phones, non-Louisiana websites, and non-Louisiana social media advertising[6], and alleges regular performances by non-Louisiana music acts.[7] As set forth below, the facts alleged

---

[1] R. Doc. 1, at para. 8.
[2] R. Doc. 1, at para. 9.
[3] R. Doc. 8, at para. 8.
[4] R. Doc. 8, at para. 10.
[5] R. Doc. 8, at para. 11.
[6] R. Doc. 8, at para. 12 – 14.
[7] R. Doc. 8, at para. 15.

in Plaintiffs' Amended Complaint exceed what this Court and many others have previously held sufficient to establish FLSA coverage.

## II.     Defendants Motion Is Mischaracterized as a 12(b)(1).

To the extent Defendants' motion is characterized as a 12(b)(1) related to jurisdiction, it is procedurally improper. *Lopez-Santiago v. Coconut Thai Grill*, 2014 WL 840052, at *2–3 (N.D. Tex. Mar. 4, 2014). Multiple Appellate Courts have held the statutory limitation of "enterprise coverage" or "individual coverage" is an <u>element</u> of the plaintiff's claim, not a <u>jurisdictional prerequisite</u>. *See, e.g., Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007); *Turcios v. Delicias Hispanas Corp.*, 275 Fed. Appx. 879, 882–83 (11th Cir. 2008) (refusing to apply the 12(b)(1) standard). Moreover, in a similar matter, the U.S. Supreme Court held the numerosity threshold for Title VII claims is an element of the plaintiff's claim, not a jurisdictional prerequisite. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006).

Addressing an identical 12(b)(1) motion, the District Court in the District of Columbia concluded "enterprise coverage under the FLSA is not jurisdictional. This is because the FLSA provisions addressing enterprise coverage contain no language suggesting that the limitation on coverage is jurisdictional." *Malloy v. Ass'n of State & Territorial Solid Waste Mgmt. Offs.*, 955 F. Supp. 2d 50, 53 (D.D.C. 2013). Defendants have not and cannot cite any controverting authority. For these reasons, defendants motion cannot survive as a 12(b)(1). Therefore, Defendants' reliance on an affidavit by Jesse Wade Yeomans is impermissible use of extrinsic evidence on which plaintiffs' have had no opportunity to conduct discovery, and should be disregarded by the Court.[8]

---

[8] Defendants motion is, in substance, a 12(b)(6). When considering a Rule 12(b)(6) motion, the general rule is that a court may only consider factual allegations within the "four corners" of the complaint, thus may not consider extrinsic evidence. *Morgan v. Swanson*, 659 F.3d 359 (5th Cir. 2011). Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a

3

### III. Applicable Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotation marks omitted). In evaluating a motion to dismiss, the Court accepts as true all of the complaint's factual, non-conclusory allegations, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "draw all reasonable inferences in favor of the nonmoving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

### IV. The FLSA Covers Plaintiffs in this Case.

The Plaintiffs in this case are covered by the FLSA because the Drinkery clearly satisfies the elements to establish "enterprise coverage" under the FLSA, as well as individual coverage.[9] Enterprise-wide coverage, under 29 U.S.C. 203(s)(1), is the most common method of establishing coverage.

#### A. FLSA Coverage Has Expanded Over Time.

Since its original enactment in 1938, Congress has amended the FLSA three times, each time enlarging the number of entities covered under the Act.[10] With the first amendment, in 1961,

---

court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

[9] Remarkably, Defendants argue restaurants and bars do not engage in interstate commerce under FLSA, which would eliminate FLSA protections, including overtime and minimum wage, for some 54,710 workers in Greater New Orleans, or 10.6% of all workers. *See*, Bureau of Labor Statistics (https://www.bls.gov/oes/current/oes_35380.htm#35-0000).

[10] *Dunlop v. Indus. Am. Corp.*, 516 F.2d 498, 500–02 (5th Cir. 1975).

Congress expanded the FLSA in two relevant respects.[11] First, it provided for enterprise-wide coverage, rather than coverage of only certain qualifying individual employees.[12] Second, Congress added the "handling clause," under which an employer will be considered to be an "enterprise engaged in commerce" if it has employees "handling, selling, or otherwise working on goods that have been moved in or produced for commerce."[13] The Fifth Circuit has noted this amendment allows the FLSA to reach retail and service businesses that were otherwise locally focused.[14]

An employee is subject to "enterprise coverage" under the FLSA if he is "employed in an enterprise engaged in commerce or in the production of goods for commerce."[15] An enterprise is engaged in commerce or in the production of goods for commerce if it:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.[16]

In their motion, Defendants do not dispute that they had gross sales in excess of $500,000.00. Indeed, they artfully dodge enterprise coverage altogether. Accordingly, the sole issue in dispute is whether plaintiffs' complaint satisfies the first prong of the enterprise coverage definition. This prong can be met in one of two ways: (1) either by the "engaged in commerce" clause, or (2) the "handling" clause. Under the "handling clause," the FLSA reaches retail and

---

[11] Fair Labor Standards Amendments of 1961, Pub.L. No. 87–30, 75 Stat. 65 (1961).
[12] *Dunlop*, 516 F.2d at 500–01.
[13] 29 U.S.C. § 203(s) (1961).
[14] *Dunlop*, 516 F.2d at 501.
[15] 29 U.S.C. § 207(a)(1).
[16] *Id*. § 203(s)(1)(A)(i)-(ii).

5

service businesses that may be local in nature like the Defendants, which handle or otherwise work on goods or materials that have been moved in or produced for commerce.[17]

"Goods" is expressly defined by the FLSA as "wares, products, commodities, merchandise or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof."[18] Further, the "legislative history here helps confirm that where a business provides a service using an item as part of its 'commercial operations,' Congress intended for those kinds of items to be viewed as 'materials.'"[19] The second inquiry is "whether the item is being used commercially in the employer's business."[20] Under this prong, the "materials" must have a "significant connection with the employer's commercial activity as opposed to a mere incidental use."[21]

### B. Appellate Courts Hold the FLSA Covers an Enterprise with Annual Business Over $500,000 with Employees Handling Materials that Previously Moved in Interstate Commerce.

Appellate courts have consistently interpreted 29 U.S.C. 203(s)(1)(A)(i) to cover enterprises with annual sales or business exceeding $500,000 whose employees handle goods or materials that have moved in interstate commerce, including where the goods or materials are no longer moving in commerce. The Fifth Circuit acknowledged that "an employer can trigger enterprise coverage if its employees handle items that had travelled in interstate commerce at some point in the past, even if the act of handling those items does not amount to engaging in

---

[17] *Dunlop*, 516 F.2d at 501 (FLSA coverage extends to retail and service establishments whose businesses were otherwise local in character).
[18] 29 U.S.C. § 203(i).
[19] *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1225 (11th Cir. 2010).
[20] *Id.* at 1225–26
[21] *Id.* at 1226.

commerce in the present." *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 786–87 (5th Cir. 2020) (citing *Polycarpe*, 616 F.3d at 1221 and *Sec'y of Labor v. Timberline S., LLC*, 925 F.3d 838, 845 (6th Cir. 2019)).

The Fifth Circuit has rejected the argument that plaintiffs must "allege that their actual work activities directly affected interstate commerce," and explained that they "merely" need to claim "that the goods or materials they handled had previously come into the state from elsewhere." *Id.* at 787. In *Polycarpe*, the Eleventh Circuit rejected the argument that the employer must be using goods or materials that are *actively* moving in interstate commerce to meet the definition of a covered enterprise, because the amended statute is phrased in the past tense, referencing "goods or materials that *have been* moved in or produced for [interstate] commerce." *Id.* at 1221 (emphasis added). The Sixth Circuit, in *Timberline*, deemed irrelevant the fact that the employees did not themselves place the equipment they used in commerce, because all the statute requires is that the equipment "had previously been moved in and produced for commerce by others prior to being handled by the…employees." *Timberline*, 925 F.3d at 845.

The Fifth Circuit previously noted that "materials" does not include the ultimate-consumer exception. *Dunlop*, 516 F.2d at 501–02 & n.8. In addition, the Eleventh Circuit discussed the meaning of "goods" and "materials" at length in *Polycarpe*, 616 F.3d at 1221–27. After comparing the statutory definition of "goods," which excludes items that have been delivered into the possession of the "ultimate consumer," and the plain language meaning of "materials," which is not defined in the FLSA, and applying principles of statutory construction, the court reasoned that "materials" means "tools or other articles necessary for doing or making something." *Id.* at 1222–24. The *Polycarpe* Court concluded use of paint, tape, and screws produced out of state for a home repair company or performing landscaping tasks using tools like lawn mowers and trucks

7

made out of state for a landscaping company were sufficient "materials" to trigger FLSA coverage. 616 F.3d at 1227–29.

The Fifth Circuit has also held plaintiffs who work as heavy truckers sufficiently alleged that their employer was a covered enterprise because they handled "water, sand, gravel, construction equipment, oilfield equipment, trucks, and fuel . . . that had potentially been moved in commerce before being handled by [the employer] and its employees," and that these items could be goods or materials because "they are all items one could plausibly conclude are used in or produced during construction and trucking work." *Molina-Aranda*, 983 F.3d at 787.

### C. FLSA "Enterprise Coverage" Applies to Drinkery Employees in this Case.

There can be no doubt that plaintiffs in this case have appropriately alleged facts sufficient to create FLSA "enterprise coverage". First, defendants do not dispute they satisfy the $500,000 revenue requirement. Second, Drinkery employees engage in commerce by handling goods that moved in interstate commerce.

This Court has previously held the "interstate commerce" requirement placed at issue by Defendants' motion is "rarely difficult to establish because it is met by showing that two or more employees have handled materials that have been moved in commerce." *Smith v. Metro Sec., Inc.*, 2019 WL 6701311, at *8 (E.D. La. Dec. 9, 2019) (*citing Jacobs v. N.Y. Foundling Hosp.*, 577 F.3d 93, 99 (2d Cir. 2009)). In *Smith v. Metro Security*, this Court held employees' use of vehicles and handguns manufactured outside of Louisiana "had moved in interstate commerce (especially without any evidence to the contrary), thereby satisfying this requirement for enterprise coverage." *Id.* This Court also cited an example of the sale of "soft drinks and beer" in employment as a basis for establishing interstate commerce. *Id.*

This Court's holding in *Smith v. Metro Security* is consistent with Fifth Circuit precedent as well as the overwhelming weight of persuasive jurisprudence that finds employee use of goods

8

or materials that previously moved interstate sufficient to establish enterprise coverage. For example, in *Badon v. Reliable PCA & SIL Agency, LLC*, Judge Fallon recently held employees who use supplies and administer drugs manufactured in other states while performing their regular responsibilities are engaged in interstate commerce. 2020 WL 3605916, at *4 (E.D. La. July 2, 2020). In *Cabahug v. Tucker*, Judge Zainey held an employee who visited law firms, made telephone calls, and coordinated lunches between doctors and attorneys was engaged in interstate commerce. 2017 WL 2634344, at *3 (E.D. La. June 19, 2017).

Moreover, handling of goods and materials typical of restaurants or bars is routinely found to be "interstate commerce." *See, e.g. Diaz v. Jaguar Rest. Grp., LLC*, 649 F. Supp. 2d 1343 (S.D. Fla. 2009) (restaurant employees who sold food products originating outside the State of Florida handled goods or materials that moved in interstate commerce); *Landeros v. Fu King, Inc.*, 12 F. Supp. 3d 1020, 1025 (S.D. Tex. 2014) (restaurant with employees who handled food items, cooking utensils, kitchen equipment, cleaning materials have FLSA coverage under the handling clause); *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1225 (11th Cir. 2010) (holding where a restaurant uses interstate cooking equipment, like coffee, cleaning supplies, or cooking equipment, as an article to perform its commercial activity of serving food; the restaurant is engaged with 'materials' that will subject the business to FLSA coverage); *Blundell v. Lassiter*, 2018 WL 6738046, at *9 (N.D. Tex. May 21, 2018) (restaurant employees listing seven goods or materials handled, used, or sold which traveled through interstate commerce permits the "inference that the handling clause of the definition of enterprise coverage is satisfied"); *Ecoquij-Tzep v. Le Arlington, Inc.*, 2017 WL 6527317, at *7 (N.D. Tex. Dec. 21, 2017) (plaintiffs identification of specific goods and materials that allegedly traveled through interstate commerce and were handled in the defendants' business was sufficient to plead the first prong of enterprise coverage).

Further, use of instrumentalities of interstate commerce like telephones, credit cards, and internet, can support engagement in interstate commerce. *See*, *e.g. Poole v. Dhiru Hosp., LLC*, 2019 WL 3845454, at *5 (W.D. Tex. Aug. 15, 2019) (taking out-of-state phone calls for reservations may be sufficient to prove engagement with commerce); *Hill v. Cobb*, 2014 WL 3810226, at *9 (N.D. Miss. Aug. 1, 2014) (a plaintiff's routine communication with out-of-state clients on the phone and through other means after they returned to another state held sufficient); *Sandles v. Wright*, 2013 WL 5497788, at *7 (E.D. Tex. Oct. 3, 2013) (holding that processing credit card payments for out-of-state campers, among other tasks was sufficient to establish interstate commerce). The Department of Labor's Wage and Hour Division also advises employees "Restaurants/fast food businesses with annual gross sales from one or more establishments that total at least $500,000 are subject to the FLSA…For example, a waitress or cashier who handles a credit card transaction would likely be subject to the Act."[22]

The Plaintiffs in this case indisputably handle goods or materials moving in interstate commerce. The Drinkery employees pour, refill, sell, move or otherwise handle non-Louisiana beer, wine, and liquor products.[23] Consistent with this Court's reference to *Jacobs* in its *Smith v. Metro Security* decision, plaintiffs' in this case handle and sell "soft drinks and beer" originating outside of Louisiana, which is sufficient to establish interstate commerce. 2019 WL 6701311, at *8.

Further, Drinkery employees prepare, sell, or otherwise handle and use several non-Louisiana food products and cookware.[24] This fact is also sufficient to establish interstate commerce

---

[22] U.S. Department of Labor, Fact Sheet # 2 (https://www.dol.gov/agencies/whd/fact-sheets/2-flsa-restaurants).
[23] R. Doc. 8, at para. 10.
[24] R. Doc. 8, at para. 11.

10

under the handling clause. *Diaz*, 649 F. Supp. 2d 1343; *Landeros v. Fu King, Inc.*, 12 F. Supp. 3d at 1025. In addition, Drinkery employees interact with customers in several states, co-workers, and management through instrumentalities of interstate commerce, including credit cards and card machines, phones, non-Louisiana websites, and non-Louisiana social media advertising.[25] This fact also establishes engagement in interstate commerce. *Poole*, 2019 WL 3845454, at *5; *Hill* 2014 WL 3810226, at *9; *Sandles*, 2013 WL 5497788, at *7.

To the extent this Court would harbor any remaining doubt about the sufficiency of plaintiffs' allegations, plaintiffs should be afforded an opportunity to amend with the benefit of this Court's ruling. *Mejia v. Bros. Petroleum, LLC*, 2015 WL 3619894 (E.D. La. 2015).

### D. Defendants' Reliance on *Taylor* is Misplaced.

To support position that the FLSA does not apply to some 54,710 restaurant and bar employees in New Orleans, Defendants cite only two cases, both of which only address "individual coverage" under the FLSA. First, defendants cite *Taylor v. HD and Associates*, a District Court case which only evaluated FLSA "individual coverage", basing its decision on "whether the employees are actually in or so closely related to movement of commerce as to be a part of it," and stated the "application of the FLSA depends on the character of employees' activities, rather than the nature of the employer's business." *Taylor*, 2020 WL 7075348, at *6.

The *Taylor* Court's reliance on *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1379 (S.D. Fla. 2012), further reveals its exclusive consideration of individual coverage (in *Joseph*, the Court concluded the employer did not meet the $500,000 requirement, and only evaluated FLSA individual coverage.) Further, *Joseph* is inconsistent with Fifth Circuit precedent, which holds "[a]ny regular contact with commerce, no matter how small, will result in

---

[25] R. Doc. 8, at para. 8, 12 – 14.

coverage." *Marshall v. Victoria Transp. Co.*, 603 F.2d 1122 (5th Cir. 1979). Similarly, the Plaintiffs in this case also fall under individual coverage because they are in constant interaction with interstate travelers. Further, their work is an essential component of the tourism industry.

At best, *Taylor* is an outlier opinion inconsistent with both this Court's prior holdings in *Smith v. Metro Security*, and the weight of jurisprudence. Further, *Taylor* is currently under review by the U.S. Fifth Circuit,[26] which proceedings merited an amicus brief from the U.S. Department of Labor arguing *Taylor* should be reversed.[27] Finally, the *Taylor* decision was rendered on a summary judgment on the eve of trial after extensive discovery was conducted. In this case, Plaintiffs have had no opportunity to conduct any discovery. For these reasons, *Taylor* is inapplicable to this claim.

## V.     Plaintiffs' FLSA Retaliation Claims are Not Implicated by Defendants' Motion.

Even if the Drinkery was not a covered enterprise subject to the FLSA, the Plaintiffs' FLSA retaliation claims would remain unaffected. The Fifth Circuit has unambiguously held "the protections of [the FLSA retaliatory provision] apply, without qualification, to 'any employee'" regardless of whether there is coverage under the Act. *Wirtz v. Ross Packaging Comp.,* 367 F.2d 549 (5th Cir.1966). The *Wirtz* decision conclusively determined that FLSA retaliation claims may exist even without FLSA coverage of an individual or enterprise, which jurisprudence has existed uninterrupted for 55 years. *Id.*

Several district courts across the country endorse the *Wirtz* holding. *See*, *e.g. Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1314–15 (S.D. Fla. 2012) (citing *Cedano v. Alexim Trading Corp.,* 2011 WL 5239592, *4 (S.D.Fla. Nov. 01, 2011) ("Plaintiffs' exemption

---

[26] U.S. Fifth Cir. Case No. 20-30815.
[27] *Id.*, at Doc. No. 00515803939.

from the protections of the wage and hour provisions of the FLSA does not preclude them from bringing a claim under the retaliatory firing provision of the FLSA"); and *Obregon v. JEP Family Enter., Inc.,* 710 F.Supp.2d 1311, 1314 (S.D.Fla. 2010) ("[t]he FLSA's prohibition on retaliation is broader than its coverage of minimum wage or overtime wage violations.") Coverage under the FLSA is not an element of a relation claim under 29 U.S.C. 215(a)(3), therefore defendants motion alleging lack of FLSA coverage for an overtime claim does not implicate Plaintiffs' retaliation claim.

## VI. Conclusion

Defendants' motion cannot survive as a 12(b)(1), therefore defendants' self-serving affidavit should not be considered, particularly without affording plaintiff an opportunity for discovery. Further, Defendants' motion applies incorrect or otherwise inapplicable law to plaintiffs' claims, which are covered by the FLSA. Finally, even if Defendants were correct about FLSA coverage (and they are not), plaintiffs' retaliation claims would remain unaffected. For these reasons, Defendants' motion should be denied, or plaintiffs' otherwise afforded an opportunity to amend.

**Respectfully submitted:**

*/s/ Daniel A. Meyer*
Joseph M. Bruno (La. Bar # 3604)
Daniel A. Meyer (La. Bar # 33278)
Bruno & Bruno, L.L.P.
855 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 525-1335
Facsimile: (504) 562-6775
Email: dmeyer@brunobrunolaw.com
*Attorneys for Bancroft and Sharone*

## **CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the above and foregoing pleading upon all counsel of record by electronic filing through CM/ECF, or other electronic transmission this July 7, 2021.

*/s/ Daniel A. Meyer*
Daniel A. Meyer
