UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRITTANY BANCROFT and ARIEL SHARONE**, on behalf of themselves and All others similarly situated | CIVIL ACTION NO. 2:21-CV-545 |
| | JUDGE: ASHE |
| | MAGISTRATE: VAN MEERVELD |
| v. | |
| **217 BOURBON, LLC and JESSE WADE YEOMANS,** | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION
FOR CERTIFICATION OF COLLECTIVE ACTION (REC. DOC. NO. 26)**

**NOW INTO COURT,** through undersigned counsel, come Defendants 217 Bourbon, LLC and Jesse Wade Yeomans, and submit their Memorandum in Opposition to Plaintiffs' Motion for Certification of Collective Action (rec. Doc. No. 26) and aver as follows:

**PROCEDURAL BACKGROUND**

The instant Matter was filed by Plaintiffs on March 17, 2021. The original Complaint included allegations that plaintiffs on behalf of themselves and those similarly situated, were "bartenders at The Drinkery bar in New Orleans"[1] and thus were seeking to proceed with this matter as a class action. On April 23, 2021, Defendants executed a waiver of service and provided it to counsel for plaintiffs. Defendants then filed a Motion to Dismiss on May 25, 2021 pursuant to Rule 12 of the Federal Rules of Civil Procedure (Rec. Doc. No. 6), which was then followed by an Amended Complaint filed by Plaintiffs on June 4, 2021 (Rec. Doc. No. 8). On September 23, 2021 the Scheduling Conference in this matter occurred, followed by the filed Scheduling Order on the same date (Rec. Doc. No. 20).

---

[1] *See* Plaintiffs' Complaint, paragraph 13.

1

The instant Motion was filed on December 27, 2021, 285 days after the filing of the original Complaint, 248 days after Defendants executed their waiver of service and returned it to plaintiffs' counsel, and 206 days after Plaintiffs' filed their Amended Complaint.

At no time did plaintiffs previously move to extend the deadline to file a Motion to Certify the Class pursuant to F.R.C.P. 23 or Local Rule 23.1(B) of this Court, nor was any extension or different deadline provided by this Court in its Scheduling Order.

## FACTUAL BACKGROUND

Plaintiffs Complaint, filed, on behalf of themselves and those similarly situated, are "bartenders at The Drinkery bar in New Orleans."[2] Plaintiffs allege that The Drinkery is a bar which "prepares and serves alcoholic beverages to local and tourist clientele."[3] Plaintiffs further allege that as employees of The Drinkery, their duties and responsibilities included "taking customer drink orders, preparing and serving alcoholic beverages, cleaning and stocking the bar, and working private events."[4]  Defendants do not dispute these facts.

The Drinkery is a very successful bar located on the 200 block of Bourbon Street, with gross revenues in excess of $500,000.00 a year.  Defendants have never before received any complaints about their payment of wages to bartenders[5] and other employees because even during the pandemic, bartenders like the plaintiffs usually make $20.00 an hour at a minimum, and often much more.

Plaintiffs' claims are that Defendants failed to pay their employees minimum age for hours worked, failing to pay overtime for hours worked in excess of 40, and improper procedures for

---

[2] *See* Plaintiffs' Complaint, paragraph 13.
[3] *Id.,* at paragraph 8.
[4] *Id.,* at paragraph3 23 & 26.
[5] *See* rec. Doc. No. 26-4, p. 4, Defendants' response to Plaintiffs' Interrogatory No. 11.

defendants' use of a "tip pool."[6] In support of these allegations, plaintiffs have not submitted any evidence of declarations of their own or of any other supporting witnesses; the only evidence they have provided is in the form of defendants written discovery responses and selected pages of the documents produced by defendants in discovery.[7]

Defendants have denied plaintiffs' allegations and maintain that they have at all times complied with the FLSA. At no time, even accounting for the tip credit which defendants are allowed to utilize under the FLSA, were plaintiffs (or any other bartender or employee) paid less than minimum wage or paid at a rate that would not cover overtime pay requirements for hours worked in excess of 40. The very documents plaintiffs attached demonstrate this fact – the pay stub submitted on behalf of plaintiff Sharone shows he only worked 24.18 hours in a two week period, and his rate of pay was $22.29 an hour.[8] Similarly, for the one date that plaintiff Bancroft worked for which plaintiffs submitted records, March 12, 2020, Bancroft made $23.01 an hour.[9] Defendants have produced all of the wage and tip pool records of each plaintiff for the time they were employed. Certainly, if there was even a single instance in which the records demonstrated violations of the FLSA, plaintiffs would have attached them to this motion. The reason they didn't is because it didn't happen and their allegations are without merit.

For Sharone, he worked at The Drinkery for less than two months, between December 2019 and January of 2020, until he quit and walked off the job during a shift. The Drinkery pays its employees biweekly, and the most hours Sharone ever worked in a two-week period was 39.67.[10] Furthermore, the least he was ever paid per hour in that time period was $19.58 an hour during his

---

[6] *See* Plaintiff's Memorandum in Support of Motion for Certification of Collective Action, p. 1-2.
[7] *See* Rec. Doc. 26-5
[8] *See* Rec. Doc. 26-5, p. 3; $539.02 in total wages divided by 24.18 hours worked equals $22.29 an hour.
[9] *See* Rec. Doc. 26-5, p. 2.
[10] *See* Defendants' Exhibit 1, Paychex records of Sharone.

first two weeks of employment, well more than the minimum wage and well more than he would have been entitled to earn if he had in fact ever worked overtime hours.[11]

The same is true for Bancroft, even though she worked at The Drinkery for much longer. While most of her weeks involved working between 10-20 hours; the most she ever worked in a biweekly period was 74.20 hours between February 22 and March 6, 2020. The least she was ever paid per hour was $17.70 between December 15 and 28th, 2018.[12]

## LAW AND ARGUMENT

1. **Plaintiffs' Motion to Certify Class is untimely, and must be denied and all class allegations stricken from their complaint.**

In reviewing Motions for Class Certification filed in the Eastern District of Louisiana, one precept is abundantly clear – strict adherence to Local Rule 23.1 is required. Local Rule 23.1(B) specifically requires that "within 91 days after filing of a complaint in a class action" plaintiffs "***MUST*** move for class certification under FRCP 23(c)(1)", unless this period is extended upon motion for good cause and order by the Court. The early deadline established by Local Rule 23.1 supplements the general requirement if FRCP 23(A) that a certification order should be determined "at an early practicable time." While ignoring Local Rule 23.1, plaintiffs have in their motion admitted that "the determination of whether to proceed as a collective action **must be made as early as possible in the case.**"[13]

Because plaintiffs made class allegations in their original complaint, plaintiffs' deadline to move for class certification, or file a motion to extend the deadline was June 16, 2021, over 6 months before the instant motion was finally filed. Even assuming, *arguendo,* that the time frame did not start until plaintiffs filed their amended complaint in response to defendants' motion to

---

[11] *Id.*
[12] *See* Defendants' Exhibit 1, Paychex records of Bancroft.
[13] *See* Plaintiff's Memorandum in Support of Motion for Certification of Collective Action, p. 3-4, *citing Swales.*

dismiss (which isn't even countenanced by the jurisprudence), plaintiffs still would have had to file the instant motion or for an extension of the deadline to file the instant motion no later than September 3rd, 2021.

Local Civil Rule 23 is clear – a plaintiff must move for class certification 91 days after the filing of a complaint in a class action, unless the period is extended upon motion for good cause and order of the court. LR 23.1(B). *Cassidy v. Ford Motor Co.*, CV 15-2483, 2016 WL 3001131, at *1 (E.D. La. May 25, 2016) To comply with this rule, a plaintiff may not rely on class allegations contained in a complaint, but must, instead, file a motion for class certification. *Id,* citing *Escoe v. State Farm Fire & Cas. Co.*, No. 07-1123, 2007 WL 2903048, at *2 (E.D. La. Sept. 27, 2007). As has been routinely held by the courts in this district, the penalty for failing to satisfy Local Civil Rule 23.1(B), without moving for an extension of time, is the dismissal of class allegations. *See, e.g., id.* at *3; *McGuire v. Gulf Stream Coach, Inc.*, No. 06-5659, 2007 WL 1198935, at *1 (E.D. La. Apr. 20, 2007) (and cases cited therein).

As Judge Feldman detailed in 2018 in *Taylor v. Denka Performance Elastomer LLC*, CV 17-7668, 2018 WL 339109, at *2 (E.D. La. Jan. 9, 2018)[14] in denying an untimely motion for extension of time to file a motion for class certification, Local Rule 23.1 has been strictly construed by district courts in this circuit:

> "Without good cause shown, district courts in this circuit generally deny class certification or extensions for seeking class certification when the request is made beyond the deadline created by Local Rule 23.1(B). *See Lowery*, 2015 WL 5321758, at *5 (*citing McGuire*, 2007 WL 1198935, at *1; *Lauer*, 2007 WL 203974, at *1); *Restreppo v. Al-Mona, Inc.,* No. 11-1422, 2012 WL 1941926, at *2 (E.D. La. May 29, 2012) (citing *Buckley v. Donohue Indus., Inc.*, 100 Fed.Appx. 275, 278 (5th Cir. 2004); *Townsend v. Hibernia Nat'l Bank*, No. 93-1798, 1994 WL 24233, at *2 (E.D. La. Jan. 20, 1994)). "If a Plaintiff fails to move for class

---

[14] Defendants note that the law firm that represents plaintiffs, Bruno & Bruno, was one of the law firms representing the plaintiffs in *Taylor,* wherein a motion to extend the deadline to move for class certification was denied for failure to timely file such a motion even in circumstances nowhere near as egregious as the delay herein.

> certification within the 91-day period stipulated by Local Rule 23.1(B), absent a showing of good cause, courts will dismiss or strike class allegations*." Thigpen v. Fla. Gas Transmission Co., L.L.C.*, No. 14-1415, 2015 WL 1292821, at *2 (E.D. La. Mar. 23, 2015) (collecting cases). Consistent with this strict policy, "plaintiffs with a potential deadline extension should still act prudently by filing a motion for class certification before the deadline passes, so as to preserve those rights." *Restreppo*, 2012 WL 1941926, at *1 (citing *Price v. United Guar. Residential Ins. Co.*, No. 3:03-CV-2643-G, 2005 WL 265164, at *5 (N.D. Tex. Feb. 2, 2005))."

Plaintiffs have not even addressed this issue, nor have plaintiffs even filed a motion to extend the deadline to file the instant motion, which is required. As such, plaintiffs have not met their burden of demonstrating good cause for the delay in filing the instant motion.

Moreover, even if plaintiffs had addressed the issue, "courts view good cause narrowly when the deadline has passed." *Taylor,* 2018 WL 339109, at *3. Even though plaintiffs have not briefed the issue, defendants note that even if plaintiffs were to allege in any reply memorandum that they needed to engage in discovery as to class certification issues, and they were not able to file the instant motion until defendants had responded to their discovery, plaintiffs did not issue the discovery attached to the instant motion until September 23, 2021, over three months after plaintiff should have either had to file the instant motion or request an extension to file it. Thus, it cannot be said that plaintiffs acted diligently. Considering Plaintiffs haven't even provided any argument as to good cause, and the fact that trial is a little over 4 months away, this motion is beyond untimely, and this Court should rule in the same way as Judge Feldman ruled in *Taylor,* and deny plaintiffs' motion:

> "the fact that discovery would be beneficial to a class action determination does not excuse the plaintiffs from seeking a timely extension of the deadline as Local Rule 23.1(B) requires. *See Lowery*, 2015 WL 5321758, at *5; *Restreppo*, 2012 WL 1941926 at *1; *Kramer*, 2002 WL 1163619, at *1; *Stewart*, 2001 WL 1000732, at *1-2. The plaintiffs have failed to show how they acted diligently in attempting to make discovery related to class certification prior to the deadline. Because no good cause supports an extension and the request itself is untimely, the motion to extend must be denied.

*Taylor* 2018 WL 339109, at *4.

## 2. Even if the instant Motion was timely, plaintiffs' motion should be denied following *Swales*

Out of an abundance of caution and notwithstanding the above, defendants assert that the instant matter is not appropriately certified as a class action because there is not enough information before the Court to perform the "rigorous analysis" required by the current standard endorsed by the Fifth Circuit following the procedure outlined in *Swales*. The rigorous analysis this Court must undertake to certify a class in *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 545–46 (5th Cir.2020):

> Given the impact of certification, district courts must analyze Rule 23 with special attention. Certification is proper only where "the trial court is satisfied, after a *rigorous analysis*,"[2] that the Rule's requirements are met. Put another way, "a district court must detail with sufficient specificity how the plaintiff has met the requirements of Rule 23." *Vizena v. Union Pac. R.R.*, 360 F.3d 496, 503 (5th Cir. 2004) (per curiam).
>
> "Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350, 131 S.Ct. 2541. Instead, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact," and so on. *Id.*
>
> As a result, in weighing certification, the court will often have "to probe behind the pleadings," *Falcon*, 457 U.S. at 160, 102 S.Ct. 2364, because "[t]he class determination generally involves considerations that are enmeshed in the factual and legal issues" of the case, *Dukes*, 564 U.S. at 351, 131 S.Ct. 2541. So the court should seek to "understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination[.]" *Flecha v. Medicredit, Inc.*, 946 F.3d 762, 766 (5th Cir. 2020). "If some of the determinations ... cannot be made without a look at the facts, then the judge must undertake that investigation." *Spano v. Boeing Co.*, 633 F.3d 574, 583 (7th Cir. 2011). The judge cannot merely "review a complaint and ask whether, taking the facts as the party seeking the class presents them, the case *seems* suitable for class treatment." *Id.* (emphasis added). Much more is needed."

According to plaintiffs, class certification is warranted because their allegations involve similarly situated employees at a single location, that there were not material differences in which they were employed, and that the total number is manageable.[15]  However, Plaintiffs have provided little for this Court to make a rigorous analysis beyond the pleadings.  They haven't even submitted their own declarations detailing the evidence or knowledge they have which supports their claims. Rather, plaintiff simply rely on the pleadings and *certain* of the written discovery responses of defendants, ignoring the documents produced which demonstrate that Defendants have not violated the FLSA.

Importantly, Plaintiffs rely on *Swales v. KLLM Transport Services, LLC,* 985 F.3d 430 (5th Cir. 2021) in support of the instant motion; however, such reliance is misplaced because what plaintiffs again ignore is that the Fifth Circuit's decision in *Swales* set a new standard for the proper way for this Court to engage in the required rigorous analysis to determine whether a class should be certified, and, more importantly, who should be in the class, so as to avoid "crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool." *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 442 (5th Cir.2021). Thus, The Fifth Circuit instructed the district courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'" and "authorize preliminary discovery accordingly." *Swales,* 985 F.3d at 441. Then, "[a]fter considering all available evidence, the district court may conclude [whether] the Plaintiffs and Opt-ins are too diverse a group to be 'similarly situated' ... [or whether] Plaintiffs have ... met their burden of establishing similarity." *Id.*, at 444.  In short, the "district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of

---

[15] *See* Plaintiff's Memorandum in Support of Motion for Certification of Collective Action, p. 3.

the case, not after a lenient, step-one 'conditional certification.' Only in that way can the district court ensure the requested opt-in notice will go to those who are actually similarly situated to the named plaintiffs." *Id.*, at 444. Because plaintiffs did not pursue class action status timely, this Court is unable to comply with *Swales* in order to perform the rigorous analysis in order to determine whether a class would even be warranted, notwithstanding the dearth of any evidence whatsoever which will allow plaintiffs to prevail on their claims.

The Fifth Circuit's caution in *Swales* about the "real risk of abuse of the collective action device"[16] concerning notice to potential plaintiffs of a class comes from concerns raised by the United States Supreme Court in *Hoffman-La Roche, Inc. v. Sperling,* 495 U.S. 165, 174 (1989) concerning district courts being scrupulous and maintaining judicial neutrality by exercising discretion in the notice-giving process so as to avoid even the appearance of judicial endorsement of the merits. This is even ore important in the context of the rigorous analysis this Court must perform here, where plaintiffs seek to certify and give notice to a potential class without supplying even a shred of evidence which supports their claims – and where the evidence actually shows that Defendants have in fact complied with the FLSA.

## **CONCLUSION**

Plaintiffs' Motion for Certification of Collective Action should be summarily denied where plaintiffs failed to either timely file the motion or request an extension to file the motion, and failed to demonstrate any good cause for such a late filing. Furthermore, even if the filing was timely, plaintiffs have not met their burden of providing the evidence, law, and other information for this Court to perform the "rigorous analysis" required by the Fifth Circuit in the context of their FLSA claims following the Fifth Circuit's holding in *Swales* to grant the motion.

---

[16] *Swales,* 985 F.3d at 436

**WHEREFORE,** Defendants 217 Bourbon, LLC and Jesse Wade Yeomans, respectfully request this Honorable Court deny Plaintiff's Motion for Certification of Collective Action.

STERNBERG, NACCARI & WHITE, LLC

_____
**JUSTIN E. ALSTERBERG-T.A.,** La. Bar No. 31015
**GRAHAM WILLIAMS,** La. Bar No.
935 Gravier Street, Suite 2020
New Orleans, Louisiana 70112
Telephone: 504.324.2141
Facsimile:   504.534.8961
ja@snw.law | carl@snw.law | graham@snw.law

*Counsel for 217 Bourbon, LLC and Jesse Wade Yeomans*

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing pleading has been served on all parties or their counsel of record by through the court's CM/ECF system on the 5th day of January, 2022.

_____
STERNBERG, NACCARI & WHITE, LLC