UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

BRITTANY BANCROFT, *et al.*              CIVIL ACTION

VERSUS             NO. 21-545

217 BOURBON, LLC, *et al.*             SECTION M (1)

### ORDER & REASONS[1]

Before the Court is a motion by plaintiffs Brittany Bancroft and Ariel Sharone, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs") for certification of a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*[2] Defendants 217 Bourbon, LLC and Jesse Wade Yeomans (together, "Defendants") respond in opposition,[3] and Plaintiffs reply in further support of their motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion as to a certifying a collective action of bartenders, and ordering further discovery as to other categories of employees.

**I.  BACKGROUND**

This case involves FLSA and state-law claims. Plaintiffs worked as bartenders at The Drinkery, Defendants' bar and restaurant located on Bourbon Street in New Orleans.[5] Plaintiffs allege that Defendants (1) failed to pay minimum wage and overtime pay in violation of the FLSA; (2) docked their pay and misappropriated tips in violation of Louisiana law; and (3) fired Plaintiffs

---

[1] This Order & Reasons corrects a non-substantive error in the original one issued on January 13, 2022. Specifically, it removes the word "conditionally" from part A of the conclusion section. All other aspects of the original Order & Reasons, including the deadlines set forth therein remain in effect.
[2] R. Doc. 26.
[3] R. Doc. 27.
[4] R. Doc. 30.
[5] R. Doc. 8 at 2.

in retaliation for questioning their wages.[6] Plaintiffs allege that approximately 40 current and former bartenders have been affected by Defendants' common policies and practices resulting in the failure to pay minimum wage and overtime pay.[7] Defendants paid Plaintiffs an hourly wage of $2.13 and applied a "tip credit" towards the remainder of the $7.25 per hour federal minimum wage.[8] Plaintiffs allege that Defendants' use of the tip credit was improper because Defendants (1) did not provide them with advance notice that the tip credit would be applied and (2) allowed certain of the bar managers, who are not customarily tipped employees, to retain a significant portion of the tips that were intended for the bartenders.[9] Plaintiffs further allege that Defendants improperly paid them the standard hourly rate of $2.13 for hours worked in excess of 40 in a workweek, without adding overtime pay.[10] Plaintiffs also allege that Defendants had a policy of making paycheck deductions for employee mistakes (*e.g.*, chargebacks and register shortages) or customer walkouts, which resulted in a failure to pay them a statutory minimum wage.[11]

## II.   PENDING MOTION

Plaintiffs seek certification of an FLSA collective action with putative opt-in members consisting of:

> All employees who are or were employed by Defendants at The Drinkery bar in New Orleans at any point from March 17, 2018 to present (three years prior to filing the complaint), who receive[d] a "tip credit" towards their minimum wage, and/or have worked over 40 hours in at least one workweek from March 17, 2018 to the present, and who were subject to the pay practices of Defendants during that time.[12]

Plaintiffs argue that the collective action should be certified under the standard the Fifth Circuit articulated in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021), because

---

[6] *Id.* at 12-17.
[7] *Id.* at 6.
[8] *Id.* at 7-8.
[9] *Id.* at 6-10.
[10] *Id.* at 10-11.
[11] *Id.* at 11-12.
[12] R. Doc. 26-1 at 1-2.

Defendants' discovery responses indicate that there are similarly situated employees that fit within the proposed collective action definition.[13]  In particular, Plaintiffs argue that the putative collective action members are similarly situated because they were all employed at the same location, worked in a position that customarily receives tips, had a tip credit applied to their wages, participated in a tip pool, worked in excess of 40 hours per workweek, and received less than minimum wage or were not paid overtime.[14]  According to Plaintiffs, there is no individual analysis required to determine collective action membership as would prevent certification under *Swales*.[15]  In addition to collective action certification, Plaintiffs seek an order (1) requiring Defendants to disclose the names, last known home addresses, email addresses, and home and cellular telephone numbers of the putative collective action members, (2) directing the parties to meet and confer to confect a proposed notice and consent form to be sent to putative collective action members, (3) allowing the proposed notice and consent forms to be sent to putative collective action members via mail, text message, and email, and (4) requiring Defendants to post the notice and consent forms in common areas of The Drinkery for the entire opt-in period.[16]

In opposition, Defendants argue that Plaintiffs' motion for certification of the collective action is untimely under Local Rule 23.1 because it was filed more than 91 days after the filing of the complaint.[17]  Defendants also argue that, even if the motion were timely filed, Plaintiffs have not provided enough evidence, such as their own declarations or those of other witnesses, for the Court to perform the rigorous analysis required to certify a class under either Rule 23 of the Federal Rules of Civil Procedure or *Swales*.[18]  Moreover, Defendants argue that, even accounting for the

---

[13] *Id.* at 3-4.
[14] *Id.* at 4.
[15] *Id.*
[16] *Id.* at 5-6.
[17] R. Doc. 27 at 4-7.
[18] *Id.* at 3, 7-10.

tip credit, the named Plaintiffs were always paid at least the statutory minimum wage and a rate that covered overtime pay requirements for hours worked in excess of 40 in a workweek.[19]

Plaintiffs reply arguing that Defendants are improperly conflating the requirements of Rule 23 with the FLSA.[20] Plaintiffs point out that Local Rule 23.1 and the case upon which Defendants' rely for the proposition that the Court must perform a "rigorous analysis" apply to class actions arising under Rule 23, not the FLSA.[21] Indeed, the case cited by Defendants, *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542 (5th Cir. 2020), involved ERISA claims brought as a Rule 23 class action, not an FLSA collective action.[22] Further, Plaintiffs argue that Defendants have not identified any material differences in the putative plaintiffs who all worked at a single location and were subjected to the same pay policies.[23]

### III. LAW & ANALYSIS

#### A. Local Rule 23.1

Local Rule 23.1 pertains to cases filed in this district as class actions under Rule 23 of the Federal Rules of Civil Procedure. Section B provides:

> Within 91 days after filing of a complaint in a class action or filing of a notice of removal of the class action from state court, whichever is later, plaintiff must move for class certification under FRCP 23(c)(1), unless this period is extended upon motion for good cause and order by the court.

LR 23.1(B). The rule does not apply to collective actions filed under the FLSA. *See York v. Advocs. for Juv. & Adult Rts.*, 2018 WL 438196, at *5-6 (E.D. La. Jan. 16, 2018) (applying LR 23.1(B) to class action allegations made under Louisiana law but not to FLSA collective action claims); *see also Torres -Tinajero v. Alpha Constr. of the Triad, Inc.*, 2019 WL 3317351, at *1

---

[19] *Id.* at 3-4.
[20] R. Doc. 30 at 1-3.
[21] *Id.*
[22] *Id.*
[23] *Id.* at 3-4.

4

(M.D.N.C. July 24, 2019) (90-day window to move to certify a class under district court's Local Rule 23.1(b) "does not apply to motion for conditional certification of collective action under the FLSA"); *Hill v. Johnny's Pizza House, Inc.*, 2015 WL 11142683, at *1-2 (W.D. La. Sept. 18, 2015) (same) (observing that the Fifth Circuit in *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 (5th Cir. 2005), "declined to apply Rule 23(F) to support an interlocutory appeal in an FLSA § 216(b) collective action case because … the matter did not present a Rule 23 class action," and collecting decisions of district courts in the Fifth Circuit declining to apply local rule deadlines for seeking Rule 23 class certification to FLSA actions). Here, Plaintiffs' collective claims arise under the FLSA, not Rule 23, so the local rule does not apply. Accordingly, Plaintiffs' motion for certification of a collective action is not untimely.

### B. FLSA Collective Action Certification

The FLSA requires employers to pay covered employees a minimum wage of $7.25 per hour and overtime wages at a rate of at least one and one-half times the employee's regular rate of pay for hours worked in excess of 40 per workweek. 29 U.S.C. §§ 206(a)(1), 207(a)(1). The statute, however, allows employers to pay "tipped employees,"[24] such as bartenders, the $7.25 per hour minimum wage by counting the employees' tips toward that wage so long as the employee is paid at least $2.13 per hour. 29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.50(a). This "tip credit" is an affirmative defense to a minimum wage claim. *Lopez-Gonzales v. Ramos*, 2021 WL 3192171, at *2 (N.D. Tex. July 28, 2021). An employer is eligible for the tip credit only if the employer (1) informs its employee of the FLSA's tip credit provisions, and (2) allows the employee to retain his or her tips. 29 U.S.C. § 203(m)(2)(A); *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015). The statute allows the pooling of tips among employees who customarily and

---

[24] A "tipped employee" is defined by the FLSA as one who is "engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *Id.* § 203(t).

regularly receive them, but the employer may not take the tip credit if tipped employees are required to share tips with employees who do not customarily and regularly receive tips. 29 U.S.C. § 203(m)(2); *Montano*, 800 F.3d at 188-89.

If an employer violates the FLSA's minimum wage or overtime provisions, it is liable to the employee for the employee's unpaid minimum wages or unpaid overtime compensation, as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). To state a claim for unpaid minimum or overtime wages under the FLSA a plaintiff must plead: "(1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's [minimum wage or] overtime wage requirements; and (4) the amount of [minimum wages or] overtime compensation due." *Johnson v. Heckmann Water Res., Inc.*, 758 F.3d 627, 630 (5th Cir. 2014)

An employee may sue an employer for violating the minimum wage or overtime compensation provisions of the FLSA either individually or collectively on behalf of himself or herself and "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, which requires putative plaintiffs to opt out, a collective action under § 216(b) benefits and binds only those employees who affirmatively "opt in" to the suit. *Id.* ("No employee shall be a party plaintiff to any such action unless he [or she] gives his [or her] consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Until January 2021, in determining whether to certify a collective action under the FLSA, courts in this district generally used the *Lusardi* two-step approach, consisting of a "notice and conditional certification stage" and a "decertification stage." *See Dardar v. Pit Stop Eatery of*

*Houma, LLC*, 2021 WL 5513417, at *2 (E.D. La Mar. 30, 2021) (collecting cases). At the first stage, the court determined, based only on the pleadings and any affidavits that were submitted, whether the putative collective action members were similarly situated such that the action should be conditionally certified and the putative members given notice of the action. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). It was "a fairly lenient standard" under which "'courts appear[ed] to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Id.* at 1214 & n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). After discovery, the defendant could file a motion to decertify, and with "much more information on which to base its decision, [the district court made] a factual determination of the similarly situated question." *Id.* At this second stage, if the district court found that the claimants were not similarly situated, it decertified the class and dismissed the opt-in plaintiffs' claims without prejudice, and the class representatives (*i.e.*, the original plaintiffs) proceeded to trial on their individual claims. *Id.* On the other hand, if the district court found that the claimants were similarly situated, it allowed the representative action to proceed to trial. *Id.*

In *Swales v. KLLM Transport Services, L.L.C.*, the Fifth Circuit rejected the *Lusardi* two-step approach, noting that the approach provided little guidance to district courts and that the FLSA does not contemplate conditional certification. 985 F.3d at 439-41. The *Swales* court held that district courts "must rigorously scrutinize the realm of 'similarly situated' workers" from the outset of the case while considering "(1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court 'may facilitate notice to potential plaintiffs' for case-

7

management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id*. at 434. These requirements "are the only binding commands on district courts," but "they are unequivocal." *Id.*

District courts have "broad, litigation-management discretion" and must "consider all of the available evidence" in determining whether and to whom notice should be issued. *Id.* at 442-43. To that end, whether a district court allows an FLSA case to proceed as a collective action depends, in part, upon what and how much discovery has occurred. When the "plaintiffs all have the same job description, and the allegations revolve around the same aspect of that job … a district court will not likely need mountains of discovery to decide whether notice is appropriate." *Id.* at 441-42. In these instances, "notice might be justified when the pleadings and only preliminary discovery shows sufficient similarity between the plaintiffs' employment situation." *Id*. at 441. On the other hand, in cases where the plaintiffs "have demonstrably different work experiences, the district court will necessarily need more discovery to determine whether notice is going out to those 'similarly situated.'" *Id.* at 442. In the second type of cases, "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated,'" and "authorize preliminary discovery accordingly." *Id.* at 441. Plaintiffs bear the burden of establishing that the employees in the proposed collective action are similarly situated. *Id.* at 443 & n.65. If plaintiffs fail to meet the burden, a district court "may decide the case cannot proceed on a collective basis," order additional discovery, or "find that only certain subcategories of [potential plaintiffs] should receive notice."[25] *Id.* at 443.

---

[25] *Swales* did not impose the Rule 23 standards for class certification on FLSA claims. Thus, Defendants' assertion that this Court must apply that standard to this FLSA case is without merit.

8

C. Analysis

According to their definition of the proposed collective, Plaintiffs seek to represent two subsets of persons who were employed at The Drinkery from March 17, 2018, to the present, consisting of (1) employees who received a tip credit towards their minimum wage, and (2) employees who were not paid an overtime rate for hours worked in excess of 40 in a workweek.[26] Plaintiffs contend that the members of these subsets are similarly situated to each other because they were all subject to Defendants' policies and practices of improperly claiming a tip credit to pay less than minimum wage and failing to pay overtime wages.[27] According to Plaintiffs, Defendants' discovery responses demonstrate that the employees in the subsets were "similarly situated."[28]

In their responses to Plaintiffs' interrogatories, Defendants stated that, during the relevant time, there were four categories of employees – management (4 persons), bartenders (29 persons), bar-backs (9 persons), and security (8 persons).[29] All employees, except for management, participated in the tip pool.[30] At the end of a shift, the closing bartenders and managers calculated the cash and credit card tips, which were compiled in a tip sheet, and then the bartenders would be shown the tip sheet, which reflected daily totals and breakdowns, and asked to initial it.[31] Defendants admit that the bartenders were paid $2.13 per hour plus tips, but qualify their response with the assertion that Plaintiffs usually made more than $20 per hour and consistently earned

---

[26] R. Doc. 26-2 at 1-2.
[27] *Id.* at 4.
[28] *Id.*
[29] R. Doc. 26-4 at 4-6. In their reply, Plaintiffs state that there are 30 (not 29) bartenders who were employed by Defendants during the relevant period. R. Doc. 30 at 3. There is no explanation for the discrepancy. Plaintiffs also allude to 17 other "hourly" employees who they say fall within the collective for the overtime claims – a number that comports with the sum of the 9 bar-backs and 8 security employees identified in Defendants' discovery responses. Presumably, then, Plaintiffs are not seeking to include the 4 management employees within the collective they ask the Court to certify; otherwise, their total number of additional employees would be 23, not 17.
[30] R. Doc. 26-4 at 6.
[31] *Id.* at 7.

more than "what the overtime rate would be."[32]  The discovery responses do not contain any information concerning the hourly wages or overtime pay for management, bar-backs, or security personnel.[33]  To their opposition memorandum Defendants attached the named Plaintiffs' pay records, which Defendants claim show that both named Plaintiffs were properly paid minimum and overtime wages, if any were due.[34]  This is the full extent of the evidence submitted by the parties.

On the evidence before the Court, Plaintiffs have proved that the bartenders employed at The Drinkery during the relevant period have sufficient similarity to proceed as an FLSA collective action regarding Defendants' minimum wage and overtime pay practices.  The bartenders were all paid the same hourly wage ($2.13 per hour), plus tips, and were all subject to the same tip and overtime pay policies.  In sum, the bartenders all had the same job, at the same location, and their allegations all stem from the same aspect of their job, namely, Defendants' pay policies and use of the tip credit.  *See Lopez-Gonzales*, 2021 WL 3192171, at *1, 4-6 (certifying under *Swales* a narrowed collective of servers at a single restaurant location who were shown to have been subject to the same pay policies and tip credit); *see also Aboin v. IZ Cash Inc.*, 2021 WL 3616098, at *4 (S.D. Tex. June 29, 2021) (holding that plaintiff's evidence demonstrated that bank tellers satisfied the *Swales* standard for certifying a collective action as to overtime policies, but not as to wage deduction claims).

But the evidence before the Court does not prove that any of the other categories of employees were similarly situated to the bartenders or each other as would support certification at this juncture.  There is no information about their hourly or overtime wages or whether they are

---

[32] *Id.* at 7-8.
[33] *See id.* at 1-8.
[34] R. Docs. 27 at 3; 27-1; 27-2.

entitled to participate in the tip pool. On the current record, the Court cannot say that these employees (management, bar-backs, or security personnel) are similarly situated to the bartenders. Each category may have been subject to different pay rates and policies and working conditions that would render them not similarly situated to the bartenders. *See Lopez-Gonzales*, 2021 WL 3192171, at *5-6 (refusing to include servers at other restaurant locations in collective action due to lack of evidence of similar pay policies). Accordingly, under the standard set out in *Swales*, the motion is granted as to certifying a collective action of current and former bartenders, but denied, without prejudice, as to including other employees in the collective action, absent a later showing that they are similarly situated to the bartenders.

To that end, Plaintiffs may propound on Defendants written discovery requests on topics concerning the pay rates and policies and working conditions of management, bar-backs, and security personnel, including but not limited to questions concerning their hourly wages, salaries, use of the tip credit, participation in the tip pool, and overtime pay during the period from March 17, 2018, to present.[35] Plaintiffs must submit such discovery requests to Defendants within 14 days of the date of this Order.

## IV.   CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that Plaintiffs' motion for certification of collective action (R. Doc. 26) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that pursuant to 29 U.S.C. § 216:

A. The collective action is certified as:

All bartenders who are or were employed by Defendants at The Drinkery bar in New Orleans at any point from March 17, 2018 to present (three years prior to filing

---

[35] Again, the Court doubts whether Plaintiffs intend to include the management employees in the proposed collective but will leave that clarification to Plaintiffs.

the complaint), who received a "tip credit" towards their minimum wage, and/or have worked over 40 hours in at least one workweek from March 17, 2018 to the present, and who were subject to the pay practices of Defendants during that time.

B. Within fourteen (14) days of the date of this Order & Reasons, Defendants shall provide to Plaintiff's counsel the names, last-known addresses, email addresses, and telephone numbers (including known cell phone numbers) of all putative collective action members.

C. At the earliest mutually convenient date, the parties shall meet and confer about a joint proposed form of opt-in notice and consent and shall submit such form to the Court within ten (10) days of the date of this Order. If the parties are unable to agree on a form of notice and consent, the parties shall each submit (1) their own proposed form and (2) their objections, with supporting authority, to the opposing party's proposed form, within fourteen (14) days of the date of this Order, and request an expedited status conference on the matter.

D. Counsel for Plaintiffs shall have thirty (30) days from the date that the Court approves the proposed form of notice and consent to transmit same to the putative collective action members via U.S. mail, email, and text message.

E. Opt-in plaintiffs are granted a period of sixty (60) days from the date that the notice and consent form is mailed, emailed, or texted to execute their consent forms online using electronic signatures, thereby signifying their decision to opt in to the collective action.

New Orleans, Louisiana, this 26th day of January, 2021.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE